THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* INOCENCIO CRUZ MANFREDI, Defendant and Appellant.

No. CR-66-278.     Decided February 28, 1967.

*Héctor Lugo Bougal* and *Julio Fernández Cabrera* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On August 16, 1963, about 5 o'clock in the afternoon, several special agents and detectives, with the corresponding warrant, searched a house located in Los Chinos Section of Ponce, and, after the search, they seized certain objects which were on the frame of the entrance door to a bedroom. Upon being analyzed "the white powder in the cellophane envelope contained hydrochlorate of diacetyl-morphine, and besides the knife which had powder adhered to it, this powder contained hydrochlorate of diacetyl-morphine, that is, heroin." Appellant, Inocencio Cruz Manfredi, was accused of having in his possession and control the narcotic drug heroin.

In order to obtain the search warrant the agent, Juan Santiago Meléndez, gave a sworn statement. At the trial, over the defense's firm objection,[1] Santiago was permitted to relate in general terms the facts which gave rise to the issuance of the warrant. He testified that on the 16th, at eleven o'clock in the morning, he saw defendant deliver a small cellophane envelope of one by one and a half inches to another person who gave him a bill.[2] The court indicated that this testimony was admissible because it was closely related to the facts for which defendant was on trial and because it constituted one of the exceptions admitted to the rule which precludes evidence on the commission of other offenses.

---

[1] The defendant had requested, prior to the trial, the suppression of the evidence seized on the ground of the insufficiency of the sworn statement which supported the warrant. The court dismissed the contention and we refused to review its decision. *Cruz Manfredi* v. *Superior Court,* Cert. C-64-87, decided March 18, 1965.

[2] The defense succeeded in having the court order to strike out part of the testimony to the effect that the "deck" was of "alleged heroin" and that "when the individual arrived at defendant's house he called him Chencho."

The evidence of the People established that the policemen went to the house described in the warrant, found appellant on the porch and showed him the warrant. Then they went into the house and made the discovery in the third bedroom. Agent Santiago testified that the bedroom where the defendants slept[3] was searched, but this statement was struck out at the request of the defendants. They did not know who was the owner of the house; afterwards they were informed that it belonged to a defendant's brother.

Appellant took the witness stand. He said that he had returned from New York ten or twelve days before the search; that he had gone to live temporarily at his brother's house because another house which he owned had been leased by his brother; that there lived in the house eight other persons including five adults; that he did not occupy any of the bedrooms and that he slept on a couch in the living room. He also tried to establish that when the search warrant was executed no incriminating evidence was seized, and it was after they were taken to the police station that a second search was carried out in his absence which allegedly produced the evidence. He intimates that it is evidence deliberately placed by the agents.

In support of the reversal sought it is indicated that: (a) the judgment is contrary to the evidence and contrary to law because no relation of possession on the part of the defendant was established with the evidence seized during the search; (b) the trial court erred in permitting evidence on other criminal acts which are not the ones related in the information.

(1–2) Before charging the jury the trial judge indicated that the parties stipulated to dispense with a summary of the evidence, unless one of the jurors would be interested in the reproduction of the testimony of any of the witnesses. At

---

[3] Appellant's wife was jointly accused and acquitted by the jury.

that moment Mr. Manuel Ballesteros, who was later designated foreman of the jury, inquired:

"As to the incident which the agent noted in the morning, was it discarded for the purposes of the jury or should it be taken into account?"

The judge answered:

"In relation to the incident which the agent noted in the morning and which gave rise to the issuance of the search warrant, the incident, well, is so closely connected with the rest of the evidence that the jury should consider it. What the court did not permit was any statement which the witness might have heard, but the incident itself, you will give it the weight you may deem it has in the light of the rest of the proof and of the other evidence admitted by the court."

■ The rule for the admission of evidence of other offenses is the logical connection between these offenses and the one charged in the information. As a general rule, such evidence is not relevant unless offered to show knowledge, intent, purpose or plan, or because it is part of the *res gestae*, or when both offenses are a part of the same transaction. *People* v. *Juarbe*, 43 P.R.R. 428 (1932), our first ruling on that score, contains a statement of the reasons of public order which justify the rule of exclusion as well as its exceptions. Illustrative; *People* v. *Pérez*, 47 P.R.R. 724, 747–749 (1934), the exception of the admission to establish intent—in a prosecution for embezzlement, other checks which had been appropriated by defendant in the same manner as the one charged in the indictment, are admitted in evidence—; *People* v. *Rodríguez*, 66 P.R.R. 302, 310 (1946), that of contemporaneous similar transactions to establish a deliberate scheme or intent to defraud—other transactions of purchase of lottery tickets, carried out by the defendant, related to the one involved in the present proceeding—; *People* v. *Román*, 70 P.R.R. 48 (1949), that of transactions closely linked together—proof of another murder perpetrated by the de-

fendant after having committed the murder of a policeman who attempted to arrest him in order to prevent the former. See also, *People* v. *Archeval*, 74 P.R.R. 478 (1953), and *People* v. *Aponte*, 83 P.R.R. 491 (1961).

██ After examining the facts of the instant case in the light of the principles set forth, the conviction cannot be upheld. The proof of the incident which gave rise to the issuance of the search warrant does not establish knowledge, intent, purpose or plan, and likewise it is not part of the *res gestae*. Could it be said that it is a part of the same transaction? We are constrained to conclude that eliminating the inferences that might be drawn from the transaction in the morning, the rest of the evidence of the People did not connect appellant with the possession of narcotics, for it merely establishes the discovery. On the other hand, the evidence tending to establish that the envelope delivered in the morning contained heroin was not even admitted. The statement to that effect, although heard by the jury, was struck for the purposes of the consideration of criminal liability. In essence what is sought is that the conviction be upheld, not on the evidence presented as to the facts charged in the information, by itself insufficient, but on the basis of the inference of other independent and likewise insufficient facts.

The judgment rendered by the Superior Court, Ponce Part, on July 7, 1965, will be reversed.